**Clarence Lee BRANDLEY, et al., Plaintiffs–Appellants,**

v.

**James KEESHAN, et al., Defendants–Appellees.**

No. 94–20293.

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1995.

Marc D. Murr, Houston, TX, for plaintiffs-appellants.

Steve McKeithen, Asst. County Atty., Frank H. Bass, Jr., Conroe, TX, for James Keeshan, et al.

Sharon Felfe, Dan Morales, Atty. Gen., Austin, TX, for State of Texas, et al.

Marjorie A. Meyers, Bennett & Secrest, Houston, TX, for John Martin.

Tina Snelling, Hirsch, Glover, Robinson & Sheiness, Houston, TX, for the City of Conroe.

Before REYNALDO G. GARZA, HIGGINBOTHAM and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Appellants, Clarence Lee Brandley, along with his two adult children, filed suit on behalf of themselves and Brandley's minor children (referred to collectively as "Brandley") pursuant to 42 U.S.C. §§ 1981, 1982, 1983, and 1985, and Texas law against various Texas state and local agencies and officials. The district court granted the FED. R.CIV.P. 12(b)(6) Motion to Dismiss of all but three of the defendants in October 1993, and set the remainder of the case for trial. Brandley appeals the dismissal order. We affirm in part and remand.

## FACTS

Clarence Lee Brandley was tried twice in the state district court of Montgomery County, Texas for the rape and murder of a sixteen year old student, Cheryl Ferguson, which occurred on August 23, 1980. The

first trial ended in a hung jury, but Brandley was convicted of capital murder and sentenced to death at the second trial. On direct appeal, the Texas Court of Criminal Appeals affirmed Brandley's conviction, holding that the evidence was sufficient to support the verdict. *Brandley v. State*, 691 S.W.2d 699 (Tex.Crim.App.1985). However, on December 13, 1989, after Brandley had been incarcerated on Texas Death Row for almost seven years, the Texas Court of Criminal Appeals granted Brandley's petition for writ of habeas corpus, finding that the prosecution's suppression of evidence and improper investigation of the case violated Brandley's due process rights. *Ex parte Brandley*, 781 S.W.2d 886 (Tex.Crim.App.1989), *cert. denied*, 498 U.S. 817, 111 S.Ct. 61, 112 L.Ed.2d 35 (1990). Brandley's conviction was set aside and he was released to the sheriff of Montgomery County to answer the original indictment. Brandley has not been retried for Ferguson's rape and murder.

On December 6, 1991, Brandley filed this suit seeking an award of money damages and an injunction against further civil or criminal investigations or prosecutions stemming from the Ferguson murder. His complaint named as defendants James Keeshan, Jerry Winfree and Peter Speers, prosecutors with the Montgomery County District Attorney's Office (DA), and Charlie Ray, the DA's investigator; the State of Texas, the Texas Rangers and the Texas Department of Public Safety; John Styles, a criminal investigator; the Texas Department of Corrections, and its director Andy Collins in his official and individual capacities; Conroe Independent School District; Montgomery County, its sheriff's and constable's offices, and Sheriff Joseph Corley in his official and individual capacities; District Clerk Peggy Stevens in her official and individual capacities; State District Judge Jon Martin; the City of Conroe and the Conroe Police Department, as well as Marty Koerner, J.P. Bailey, Gene Reeves and Charlie Hayden.

## STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) dismissal, this Court accepts "all well pleaded averments as true and view[s] them in the light most favorable to the plaintiff." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir.1991). A dismissal will be upheld if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

## STATUTE OF LIMITATIONS

The district court denied a motion by defendants to dismiss Brandley's § 1983 claims, finding that they accrued in 1989 when his conviction was overturned, which was less than two years before he filed the instant suit. The district court next held that Brandley's state law causes of action for negligence, intentional and negligent infliction of emotional distress, false arrest/false imprisonment, assault, battery, defamation, invasion of privacy, and tortious interference with contractual relationships were time barred, noting that his state law claim for malicious prosecution was not time barred. The district court reasoned that these claims were "not implicated" in his habeas petition, and more than two years had run, un-tolled, since they accrued.

Brandley does not dispute that the state claims are governed by the two-year Texas statute of limitations set out in TEX.CIV.PRAC. & REM.CODE § 16.003 and that, generally, a cause of action arises "when a plaintiff knows or has reason to know of the injury which is the basis of the action." *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir.1989).

Up until September 1, 1987, Texas law considered imprisonment a disability that tolled the running of the limitation period. *See* former TEX.REV.CIV.STAT.ANN. Art. 5535 (Vernon) (repealed). When Texas repealed that rule in 1987, Brandley had already filed his writ, containing the factual allegations that serve as the basis for his present claims. The district court held that the pendency of Brandley's habeas petition tolled the statute of limitation on his § 1983 claims until December 13, 1989, the date the Court of Criminal Appeals set aside his convictions. However, the district court viewed Brandley's state law causes of action as discrete, non-constitutionally-based wrongs that were not implicated in Brandley's habeas petition.

For that reason, the court found that Brandley "knew" of the injuries he now complains of when the legislature repealed the disability of incarceration on September 1, 1987 and the limitations period began to run on his state law claims on that date, so that the 1991 lawsuit was outside the two year statute of limitations.

Brandley complains that the district court relied on *McCune v. Grand Rapids,* 842 F.2d 903 (6th Cir.1988), which does not control this Court, and which can be distinguished on its facts. *McCune* was cited by the district court for the proposition that Brandley's § 1983 claims survived the limitations analysis, not that his state claims did not survive, so that any error benefitted Brandley. We find no cause for reversal in this argument.

■ He also argues that his minor children's claims would not have accrued until two years after each of them reached the age of majority. Because their claims are derivative of Brandley's, their claims will be time barred when his are barred. *Cf. Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 345 (Tex.1992). This argument is also without merit.

■ Finally, Brandley argues that his state law claims are not time barred under the analysis of *Robinson v. Maruffi,* 895 F.2d 649 (10th Cir.1990), which held that a conspiracy made up of discrete acts such as false arrest and false imprisonment was essentially part of a malicious prosecution claim, and therefore accrued at the same time as that claim. We agree with Brandley to the extent that his state law causes of action for false arrest and false imprisonment accrued at the same time as his claim for malicious prosecution. However, we disagree with the analysis used by the district court to decide when those claims accrued.

■ The underlying criminal proceeding must terminate in the plaintiff's favor before a malicious prosecution claim accrues. *Heck*

*v. Humphrey,* —— U.S. ——, ——, 114 S.Ct. 2364, 2374, 129 L.Ed.2d 383 (1994); *See also Brummett v. Camble,* 946 F.2d 1178, 1183 (5th Cir.1991) *cert. denied,* 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992) (discussing the constitutional tort of malicious prosecution in the context of a claim brought pursuant to 42 U.S.C. § 1983.) Brandley has the burden of establishing that the capital murder prosecution has terminated. Typically the burden is met by proving that the state court with jurisdiction has so ruled. An acquittal, an order of dismissal based on the running of the statute of limitations on the crime or an order of dismissal reflecting an affirmative decision not to prosecute are examples of such a termination. A successful writ of habeas corpus may, in some instances, terminate a criminal prosecution in the defendant's favor. Even a prosecutor's failure to act on remand will at some point entitle a defendant to an order of dismissal.[1] However, the reversal of a conviction and remand for new trial is not, in and of itself, a termination.

There is no statute of limitations in Texas on capital murder, and there has been no acquittal in this case. Whether this proceeding has terminated in Brandley's favor is a factual question that must be answered in the first instance by the district court.[2] We cannot determine from the record before us whether the capital murder proceeding against him has terminated. We therefore reverse the district court's order to the extent that it held that Brandley's state law causes of action for false arrest and false imprisonment were barred by the statute of limitations, and remand for the district court to determine if and when the criminal prosecution terminated in Brandley's favor.

## SOVEREIGN IMMUNITY— STATE OF TEXAS

■ The district court held that all of Brandley's claims against the State of Texas

---

1. We do not reach the question of whether a plaintiff who is relying on a Sixth Amendment speedy trial claim can meet his burden of establishing that the criminal proceeding has terminated without first securing a dismissal from the state court with jurisdiction over the criminal matter on that basis.

2. While we are cognizant that this analysis impacts the question of whether or not Brandley's § 1983 claims are ripe for adjudication, those claims remain pending below and are not before us on this appeal.

were barred by Eleventh Amendment immunity. Brandley argues that Texas waived immunity from this civil rights suit in federal court by suing him for child support in a Texas court, citing *Fristoe v. Blum*, 92 Tex. 76, 45 S.W. 998 (Tex.1898). That case held that when a state becomes a suitor in its own courts, the same law applies to it that applies to individual citizens. That holding has no relevance to the immunity asserted by Texas in this case. He also argues that Texas owes him compensation because it deprived him of his livelihood, and because it took his property without just compensation, which arguments likewise do not address the issue of immunity.

 In the absence of consent, a suit in which the State or one of its agencies is named as a defendant is proscribed by the Eleventh Amendment. Civil rights statutes, particularly 42 U.S.C. § 1983, do not abrogate state Eleventh Amendment immunity. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Brandley has made no argument, and we apprehend none, that would bring this case within the Texas Tort Claims Act, or any other statutory waiver of sovereign immunity. Texas did not waive its immunity or consent to suit in this case.

## HEIGHTENED PLEADING REQUIREMENT

 Brandley contends that there is no heightened pleading requirement and the allegations stated in the complaint state a sufficient cause of action. In a related ground of error he argues that the district court erred in granting Rule 12(b)(6) dismissal because Brandley's complaint complied with FED. R.CIV.P. 8 and 9, or, in the alternative, heightened pleading should be abandoned in this circuit as a rule of pleading.

There is no basis in the district court's order for these two issues. The Defendants alleged that Brandley failed to meet the "heightened pleading standard" set forth in *Elliott v. Perez*, 751 F.2d 1472 (5th Cir.1985). The district court held, "Recently, however, the United States Supreme Court rejected the 'heightened pleading standard,'" citing *Leatherman v. Tarrant Co. Narcotics Intelli-*

*gence & Coordination Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Although this is not entirely accurate, *see Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995), any error accrued to Brandley's benefit.

## DEFENDANTS' MOTION TO STAY DISCOVERY

Brandley asserts that the district court erred in granting Defendants' Motion to Stay Discovery because the resulting delay prejudiced Appellants' access to and the availability of evidence. We review this issue for abuse of discretion. FED.R.CIV.P. Rule 26(c).

Brandley cites no specific facts or arguments, stating only that "[t]his record demonstrates dramatically how important remedial objectives of section 1983 and of the federal courts' equitable powers have been subordinated." Because a review of the record reveals no basis for this ground of error, we find no abuse of discretion in the district court's denial of Brandley's Motion to Stay Discovery.

## ABSOLUTE IMMUNITY

Brandley contends that the affirmative defense of absolute immunity does not apply to all of the acts allegedly committed by defendants John Martin, the state district judge who presided over Brandley's second murder trial and James Keeshan, the district attorney responsible for prosecuting Brandley. In the alternative, Brandley urges this Court to create a "malice" exception to the affirmative defense of absolute immunity.

a. Martin

 Martin, as a state district judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by grave procedural errors. *Stump v. Sparkman*, 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978). A judge will not be deprived of immunity because he was in error, took action maliciously or was in excess of his authority; rather he will be subject to liability only when he has acted in the clear absence of all jurisdiction. *Id.* Af-

ter reviewing the list of allegations made against Martin, including meeting with various other alleged conspirators outside of the courtroom, during nontrial hours to scheme with and threaten others to commit or cover up abuses involving Brandley's case, the district court found that the actions taken by Martin did not occur in the clear absence of all jurisdiction.

■ Brandley alleges specifically on appeal that Martin accompanied the prosecutor and the court clerk to the city dump to retrieve evidence that he believed had been disposed of. Martin contends that his alleged actions fall within the traditional judicial role of preserving the integrity of evidence used in court proceedings. Brandley counters that going to the dump exceeded the reasonable bounds of Martin's judicial role. The Supreme Court, in *Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991), held that a judge was judicially immune from suit for ordering police officers to bring an attorney before the judge, even though the judge allegedly directed officers to carry out that order with excessive force, because a judge is not deprived of immunity because the action he took was in error or was in excess of his authority. The Supreme Court noted that a judge's direction to police officers to carry out a judicial order with excessive force is not a function normally performed by a judge. But if particular acts are scrutinized in isolation, then any mistake by a judge in excess of his authority would become a "nonjudicial" act. *Id.*, 502 U.S. at 11–12, 112 S.Ct. at 288. Under the *Mireles* analysis, Martin retained his judicial immunity even in the face of the alleged trip to the dump. *See also Young v. Biggers*, 917 F.2d 873, 877 (5th Cir.1990), *on reh'g* 938 F.2d 565, 569 n. 5 (5th Cir.1991) (finding defendant judge absolutely immune from claim that he framed plaintiff for robbery); *Freeze v. Griffith*, 849 F.2d 172, 174 (5th Cir.1988) (judge absolutely immune from claim that he conspired with others to suppress exculpatory evidence.)

■ Brandley also asserts, "the Texas Court found as a fact and concluded as a matter of law that Martin acted without any jurisdiction when he purported to sentence Mr. Brandley to death. He had been previously recused from the case. Martin himself admitted he lacked any such power in his testimony before the Texas Court." He points to no specific portion of the record or the published Texas opinion that supports this assertion. The state district court found that Judge Martin "no longer had authority to set an execution date," because he had recused himself. This does not suffice to support the contention that Martin acted outside the scope of his judicial role such that he lost his absolute immunity.

b. Keeshan

■ Brandley asserts that Keeshan knew of and probably directed the intimidation of witnesses and suppression of other important evidence. The district court found that actions taken by Keeshan were part of his efforts to prepare the State's case for trial and that such acts were wholly within the scope of his judicial function, citing *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (finding absolute immunity from liability even where a prosecutor knowingly used perjured testimony, deliberately withheld exculpatory information, and failed to make full disclosure of all facts casting doubt upon the state's testimony.) Taking Brandley's allegations as true, we hold that Keeshan retained his absolute immunity from suit.

## DISMISSAL OF CITY OF CONROE

The city of Conroe asserts that the case against it was dismissed for lack of proper service, and when service was later reissued, it was outside the statute of limitation. The docket sheet, made a part of the record on appeal, indicates that on September 30, 1993, the district court quashed service of process as to the city of Conroe. Summons was returned executed as to the city of Conroe on October 15, 1993. On December 8, 1993, city of Conroe filed a motion to quash service, and on January 3, 1994 Brandley responded to that motion and sought leave to reserve the city of Conroe. On January 1, 1994, there is a minute entry ruling on these motions "for the reasons stated on the record." No transcription of that hearing was included

in the record on appeal. Brandley filed a notice of appeal on April 11, 1994, but did not raise this issue, and the City of Conroe filed no notice of appeal. We therefore express no view on the city of Conroe's assertion, and leave it in whatever posture it would have occupied relative to service of process and statute of limitations absent this appeal. Any ruling on the statute of limitation claim must be made by the district court in the first instance.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's ruling, with the exception of the dismissal of Brandley's state law claims for false arrest and false imprisonment, which we REMAND for further proceedings consistent with this opinion.