**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2009

Charles R. Fulbruge III
Clerk

No. 08-50077

SUZANNE HOOG-WATSON,

Plaintiff-Appellant

v.

GUADALUPE COUNTY TEXAS; ELIZABETH MURRAY-KOLB, Individually
and as Guadalupe County Attorney; FRANK ALLENGER, Individually and as
Guadalupe County Attorney Investigator; JOLENE MARTINEZ, Individually
and as Guadalupe County Animal Control Supervisor; KRISTEN
MOCZYGEMBA, Individually and as Guadalupe County Animal Control Officer;
DOUG PYATT, Individually and as Guadalupe County Animal Control Officer;
JENNIFER KUHN, Individually,

Defendants-Appellees

Appeal from the United States District Court for the
Western District of Texas, San Antonio Division

Before BARKSDALE, DENNIS, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

The plaintiff in this case, Suzanne Hoog-Watson, seeks redress for the
actions of county officials who, fearing for the safety of Hoog-Watson's dogs and
cats, conducted a warrantless search of her property and seized her animals.
The district court granted summary judgment in favor of the defendants by

relying upon the principles of *Heck v. Humphrey*, 512 U.S. 477 (1994), and prosecutorial immunity. Hoog-Watson appeals. We reverse and remand.

I

A

In this summary judgment appeal, we take the facts in the light most favorable to the appellant. *See, e.g.*, *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc). Hoog-Watson kept various pets at her home in Seguin, a small city in Guadalupe County, Texas. Guadalupe County employed Elizabeth Murray-Kolb as County Attorney, Frank Allenger as County Attorney Investigator, Jolene Martinez as Sheriff's Department Animal Control Supervisor, and Kristen Moczygemba and Doug Pyatt as Sheriff's Department Animal Control Officers; Seguin employed Jennifer Kuhn as Animal Control Supervisor, while nearby Schertz, Texas employed Heather Barker as Animal Control Supervisor, and Lynn Wilson and Christy Peltonan as Animal Control Officers. In August 2005, several of the officials developed a suspicion that Hoog-Watson could not provide proper care for her animals, and upon hearing that Hoog-Watson had moved to a mental health facility—a rumor that later turned out to be false—the officials suspected that the animals would soon suffer serious injury. Four officials, including Murray-Kolb, went to Hoog-Watson's home when she was not present, conducted a warrantless search of the premises, perceived an eminent danger to Hoog-Watson's animals' health, and seized 47 dogs and cats. The officials acquired a warrant the next day. Later that month, Murray-Kolb brought a proceeding against Hoog-Watson before the local Justice of the Peace. Before any hearing took place, the two reached an agreement wherein Murray-Kolb dropped the charges and Hoog-Watson agreed to pay some of the county's costs and submit to periodic inspections.

B

Hoog-Watson sued Guadalupe County, Murray-Kolb, Allenger, Martinez, Moczygemba, and Pyatt in the United States District Court for the Western District of Texas, asserted that the search and seizure had violated 42 U.S.C. § 1983 and Texas tort law, and sought both monetary and injunctive relief. *See* 28 U.S.C. §§ 1331,1367.[1] Together, the defendants filed a motion for summary judgment that asserted various grounds for dismissing Hoog-Watson's claims, including collateral estoppel (citing *Heck*, 512 U.S. 477), qualified immunity, official immunity, and prosecutorial immunity; after Hoog-Watson responded, the district court held a hearing on the motion. The district court granted the motion with respect to the federal claims by concluding that the defendants' collateral estoppel argument defeated Hoog-Watson's § 1983 claims against all of the defendants, and by concluding that prosecutorial immunity argument defeated Hoog-Watson's § 1983 claim against Murray-Kolb.[2] After denying the defendants' motion with respect to the Texas tort claims, the district court dismissed the state claims without prejudice to be refiled in state court, and entered a final judgment. Hoog-Watson appeals the dismissal of her federal claims.

II

We review a district court's grant of summary judgment de novo, and apply the same standard as the trial court. *E.g.*, *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000); *see* Fed. R. Civ. P. 56(c). The district court's decision concerning *Heck v. Humphrey*, 512 U.S. 477 (1994), disposed of the § 1983 claims against all of the defendants, and its prosecutorial immunity decision provided an additional reason to grant the motion with respect to

---

[1] Hoog-Watson also named Kuhn, Barker, Wilson, and Peltonan as defendants, but later agreed to an order dismissing all of the claims against those defendants with prejudice.

[2] The district court declined to reach the defendants' qualified immunity argument.

Murray-Kolb.  Hoog-Watson contests both of the decisions, and we address each in turn.  We also address the parties' arguments concerning qualified immunity.

A

In her first issue, Hoog-Watson argues that the district court erred when it concluded that the doctrine of *Heck*, 512 U.S. 477, barred Hoog-Watson's § 1983 claim.  *Heck* established the following rule:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487 (footnote omitted).  As the parties recognize, *Heck* applies only to suits that implicate prior criminal proceedings, *see, e.g.*, *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006) ("The policy undergirding the favorable termination rule is based on 'the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments.'").  According to the defendants, *Heck* applies because the post-seizure proceeding was criminal in nature, while Hoog-Watson says that it was civil.

For the purposes of a *Heck*-based motion for summary judgment, a proceeding's civil or criminal nature is a question of fact.  This must be so because *Heck* provides substantive boundaries for the cause of action.  According to *Heck*, "[t]he issue with respect to monetary damages challenging conviction is not, it seems to us, exhaustion; but rather, the same as the issue was with respect to injunctive relief challenging conviction in *Preiser*: *whether the claim is cognizable under § 1983 at all*."  *Heck*, 512 U.S. at 483 (emphasis added); *see*

*id.* at 489 ("We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action."); *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) ("When a claim comes within the parameters of the *Heck* teachings, it is not cognizable under 42 U.S.C. § 1983 . . . ."). In other words, the existence (or not) of a prior criminal proceeding is, like many other concrete circumstances, a fact to be proven by the party asserting the § 1983 claim.

Our precedent, although not directly on point, accords with this principle. In *Brandley v. Keeshan*, 64 F.3d 196 (5th Cir. 1995), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007), the court did not assign the burden of proving the *existence* of *Heck*-type criminal proceedings, but it did assign the burden of proving the *termination* of those proceedings. *See id.* at 199. After *Brandley* cited *Heck* for the proposition that "[t]he underlying criminal proceeding must terminate in the plaintiff's favor before a malicious prosecution claim accrues," the court asserted that "[the plaintiff] has the burden of establishing that the capital murder prosecution has terminated." *Id. Brandley* held that "[w]hether this proceeding has terminated in [the plaintiff's] favor *is a factual question* that must be answered in the first instance by the district court." *Id.* (emphasis added); *see also Krueger v. Reimer*, 66 F.3d 75, 76 (5th Cir. 1995) ("To the extent that [the plaintiff's] claims, if successful, would necessarily imply that his state criminal conviction is invalid, they are not cognizable under section 1983 because [the plaintiff] has not proved that his conviction and sentence for burglary have been invalidated."). On other occasions, we have used *Heck* to dispose of claims when the record contained some *proof* of a *Heck* triggering fact (the existence of criminal proceeding), but no *allegation* of a *Heck* saving fact (termination in the plaintiff's favor). *See, e.g.*, *Littles v. Bd. of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995) ("[The plaintiff] has questioned the validity of the confinement resulting from his parole-revocation hearing, and he has not alleged that the Board's decision has been reversed,

expunged, set aside, or called into question, as *Heck* mandates."); *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995) ("[The plaintiff] does not allege that any revocation proceeding has been reversed, expunged, set aside by a state court, or called into question by a federal court's issuance of a writ of *habeas corpus*."). These cases are consistent with the principle that, had a plaintiff alleged such a fact and accompanied it with sufficient evidence, summary judgment would not be warranted.

When this question—the existence of a prior criminal proceeding—is viewed as a question of fact to be proven by a plaintiff, the Circuit's *Heck* decisions fit comfortably within typical summary judgment practice. *Jackson* represents the easiest case: the plaintiff pleads herself out of court by alleging facts that fall directly within *Heck*'s bar. *See* 49 F.3d at 177. *Brandley* represents a more developed case: the plaintiff's pleadings do not include a *Heck* trigger but a defendant's motion for summary judgment does, and the plaintiff is forced to muster proof of *Heck*'s favorable termination requirement to avoid dismissal. *See* 64 F.3d 196. Hoog-Watson's case is between the two: The plaintiff pleads an otherwise valid § 1983 claim that *may or may not* implicate *Heck*'s factual triggers; the defendant moves for summary judgment and points to evidence of the *Heck* trigger. If the plaintiff does nothing, the defendant may be entitled to summary judgment. But if the plaintiff introduces evidence sufficient to convince a reasonable jury that the prior proceeding was civil, the plaintiff survives summary judgment. Thus, we evaluate the defendants' motion for summary judgment by determining whether Hoog-Watson's evidence created a genuine question of fact with respect to the animal cruelty proceeding's criminal or civil nature.

Our review of the summary judgment evidence indicates that it did. In the motion for summary judgment, the defendants asserted that after the seizure, "County Attorney Murray-Kolb subsequently filed animal cruelty charges

against Plaintiff," and that before proceedings began, Hoog-Watson entered a plea agreement which provided that "the animal-cruelty charges would be dismissed." According to Murray-Kolb's affidavit, the proceeding took place before "Justice of the Peace Larry Morawietz" and "regard[ed] the animal cruelty charge that had been filed by my [Murray-Kolb's] office." The affidavit concludes by asserting that "I consequently dropped the criminal charges against her [Hoog-Watson]." An affidavit from the administrative assistant to Justice of the Peace Morawietz characterized the proceeding as "the criminal case filed on August 4, 2005 against Suzanne Hoog-Watson," and asserts that Hoog-Watson "was charged with the offense of 'Cruelty to Animals.'" Attached to the affidavit was a computer record of the proceeding that listed the offense as "CRUELTY TO ANIMALS," and lists the "Case Type" as "CR (CRIMINAL, CLASS C)." Standing alone, this evidence might have justified summary judgment for the defendants. But, of course, it is not alone.

Hoog-Watson's response includes evidence of several varieties. Hoog-Watson accepts the fact that the proceeding took place before a Justice of the Peace, and asserts that this fact militates in favor of the civil characterization because criminal animal cruelty proceedings were outside of the Justice Court's jurisdiction. We agree. In 2005,[3] a violation of Texas Penal Code Section 42.09 constituted a criminal offense punishable as a "Class A misdemeanor," "state jail felony," or "felony of the third degree," Tex. Penal Code § 42.09(d), (i) (Vernon's 1977 & Supp. 2004–05), thereby falling outside of the Justice Court's jurisdiction, which extended only to criminal cases "punishable by fine only" or punishable by fine and "a sanction not consisting of confinement or imprisonment," Code Crim. Proc. art. 411(a) (Vernon's 2003 & Supp. 2005). In contrast, Texas Health and Safety Code Section 821.022

---

[3] We refer to Texas law as it stood at the time of this proceeding.

outlines civil procedures that may take place before a Justice of the Peace. Under the statute, animal control officers may obtain a seizure warrant from "a justice court" before there takes place "a hearing in the appropriate justice court or municipal court to determine whether the animal has been cruelly treated." Tex. Health & Safety Code § 821.022(a)–(b) (Vernon's 2003 & Supp. 2005). While the order memorializing the plea agreement does not make specific references to the statute in question, it does note that "the Court held a hearing to determine if any said animals seized with said warrant should be returned," terms that track the civil statute.[4]  Thus, we take the fact that the proceeding came before a Justice of the Peace and the fact that it followed the civil statute's procedures as evidence of the proceeding's civil nature.  Finally, Hoog-Watson points to the affidavit of Missy Martinez, an animal control officer who swore that "I decided not to file any charges against Ms. Watson."  Faced with this record, we conclude that Hoog-Watson presented enough evidence to raise a genuine question of fact as to whether the requisite prior criminal proceeding took place, thereby precluding summary judgment.[5]

B

In her second issue, Hoog-Watson argues that the district court erred when it concluded that Murray-Kolb's absolute prosecutorial immunity barred the claims arising from the August 4, 2005 seizure.  In the district court, Murray-Kolb argued that "[Hoog-Watson's] factual allegations include[d] actions

---

[4] In addition, Hoog-Watson's evidence includes an "Offense Information" sheet—a county computer record of the proceeding—that shows "Violation: 821.022," another reference to the civil statute.

[5] Because of our conclusion, we need not address the question of whether, if the proceeding were criminal, Hoog-Watson benefitted from the requisite favorable termination. *See Ballard*, 444 F.3d at 397 ("If a judgment in the plaintiff's favor would necessarily imply that his conviction is invalid, then the § 1983 action is not cognizable unless the conviction were reversed on direct appeal, expunged, declared invalid or otherwise called into question in a habeas proceeding.").

clearly within the scope of County Attorney Murray-Kolb's prosecutorial duties as an advocate for the State;" Hoog-Watson argued that Murray-Kolb acted outside of her role as legal advocate when she participated in the seizure by entering Hoog-Watson's home, assessing the conditions of the home, and recommending to the other participants that the animals be seized; and both parties introduced evidence in support of their respective versions of the events.[6] We review the district court's decision to grant summary judgment in favor of Murray-Kolb de novo. *See, e.g.*, *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

Our first task is to define the conduct at issue by examining the evidence in the light most favorable to Hoog-Watson. *See Hart*, 127 F.3d at 435. Four people met outside of Hoog-Watson's property on the day of the seizure: Murray-Kolb, Martinez, Allenger, and Moczygemba. According to Murray-Kolb's affidavit, Murray-Kolb performed three limited functions on the

---

[6] The district court placed the burden of proving that Murray-Kolb was performing prosecutorial functions on Murray-Kolb. For summary judgment purposes, *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), and *Hart v. O'Brien*, 127 F.3d 424 (5th Cir. 1997), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118 (1997), hold that the defendant who pleads the affirmative defense of absolute prosecutorial immunity bears the burden of proving that the conduct at issue served a prosecutorial function. *Buckley*, 509 U.S. at 274 ("The question, then, is whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates' . . . ."); *Hart*, 127 F.3d at 439 ("A prosecutor has the burden of establishing that he was an "advocate" for each function at issue." (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991), and *Buckley*, 509 U.S. at 274)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982) ("*Butz* also identifies the location of the burden of proof. The burden of justifying absolute immunity rests on the official asserting the claim."). In contrast, more recent Fifth Circuit decisions hold that after the defendant pleads the defense of prosecutorial immunity, the *plaintiff* bears the burden of introducing evidence sufficient to convince a reasonable factfinder that the defendant acted outside the scope of the immunity. *Cousin v. Small*, 325 F.3d 627, 632–33 (5th Cir. 2003); *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633–64 (5th Cir. 2000). But because *Hart* came before *Cousin* and *Beck*, *Hart* controls. *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 n.8 (5th Cir. 2006) ("The rule in this circuit is that where two previous holdings or lines of precedent conflict the earlier opinion controls and is the binding precedent in this circuit (absent an intervening holding to the contrary by the Supreme Court or this court en banc)."). Thus, the district court distributed the burdens correctly.

day of the seizure: she went to the address and "determined that the animals were in imminent danger," she "decided that the officers would obtain a seizure warrant," and she "felt it was necessary to begin removing the animals immediately." Murray-Kolb's affidavit then says that she "left the property" after the seizure coordination began, and "had no further involvement with the removal of animals."[7]

Meanwhile, Hoog-Watson's evidence suggested a more involved role. One Martinez affidavit used the term "I" to refer to Martinez alone, and the term "we" to refer to the group of four as a whole. According to that affidavit, "we could hear[] numerous dogs barking and whining," and after Martinez entered the home alone to observe the conditions inside, "we decided to seek a seizure warrant, and "[w]e decided to seize the animals." Next, the affidavit asserts that "we then proceeded to coordinate the seizure," and that after Martinez enlisted the help of other animal control officers, "we removed all but two or three of Ms. Hoog-Watson's animals" and "[w]e also seized several fans and animal crates." A second Martinez affidavit uses "I" and "we" similarly, and indicates that Murray-Kolb did not join the initial walk-through, but that "we all talked about what needed to be done," and that "we took all the animals." Meanwhile, a post-incident report from Moczygemba referred to the group of four as "we," stated that "we went into the garage," and stated that "[w]e then entered the residence" before seizing the animals. Faced with this evidence, a reasonable finder of fact could conclude that Murray-Kolb entered and inspected Hoog-Watson's property, participated in the decision to execute the seizure by rendering legal advice, planned the conduct of the seizure, and participated in the physical act of removing animals.

---

[7] In his affidavits, Allenger named Murray-Kolb as a person who gave aid to one of the animals on the property during the pre-seizure search, but stated that she did not enter the house thereafter.

Our second task is to determine whether such conduct falls within the scope of Murray-Kolb's immunity. To determine the scope of a prosecutor's absolute immunity from § 1983 liability, we ignore formal labels of identity and ask (1) whether, at the time of § 1983's enactment, the practical function of the conduct at issue merited absolute immunity, and (2) whether, at present, absolute immunity for the conduct at issue is necessary to advance the policy interests that justified the common law immunity. *Kalina v. Fletcher*, 522 U.S. 118, 123 (1997); *Buckley*, 509 U.S. at 267–71*; Burns*, 500 U.S. at 484–96; *Cousin*, 325 F.3d at 631–32. Under these principles, prosecutorial immunity extends to conduct that is "intimately associated with the judicial phase of the criminal process," *Burns*, 500 U.S. at 486 (citations omitted) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)), but not to "those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings," *Buckley*, 509 U.S. at 273. In other words, prosecutorial immunity protects "the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial," but not "the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Id.* at 273; *see Burge v. Parish of St. Tammany*, 187 F.3d 452, 478 (5th Cir. 1999) ("Because [the official's] function was to obtain evidence prior to indictment, his role was as an investigator, and not a prosecutor, so that he is not entitled to absolute immunity."); *Hart*, 127 F.3d at 439 (5th Cir. 1997) ("[A] prosecutor does not enjoy absolute immunity for acts of investigation or administration.").

We conclude that prosecutorial immunity does not shield Murray-Kolb from Hoog-Watson's claims. *Burns* holds that prosecutorial immunity does not extend to "the prosecutorial function of giving legal advice to the police" because such an extension finds insufficient support in common law immunities, and because the existence of such an immunity is not necessary to protect the

11

integrity of the judicial process. 500 U.S. at 494–95; *accord Buckley*, 509 U.S. at 270–71; *see Hughes v. Tarrant County Tex.*, 948 F.2d 918, 922–23 (5th Cir. 1991) ("[T]he district attorney and his assistant are not entitled to absolute immunity from suit arising from their giving legal advice to the Commissioners Court."). While *Buckley* said that a prosecutor's absolute immunity continues to cover "the professional evaluation of the evidence assembled by the police," 509 U.S. at 273, this is not that case because Murray-Kolb evaluated the conditions at Hoog-Watson's property *as part of* the effort to assemble the evidence. "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" *Id.* (quoting *Hampton v. Chicago*, 484 F.2d 602, 602 (7th Cir. 1973)). In short, Murray-Kolb "participated in the search and seizure at the peril of receiving only qualified immunity." *Hart*, 127 F.3d at 440–41. Thus, the district court erred when it concluded that Murray-Kolb's absolute prosecutorial immunity shielded her from all of Hoog-Watson's claims.

## C

Finally, we address the question of the defendants' entitlement to qualified immunity. In the district court, the defendants' motion for summary judgment included a qualified immunity argument to which Hoog-Watson responded, but the district court did not reach the argument because of its resolution of the *Heck* and prosecutorial immunity issues. On appeal, the defendants devote very little attention to qualified immunity, and do not include the argument as part of their request for relief. Accordingly, we express no opinion on the qualified immunity argument, which the defendants remain free to reassert on remand, *see, e.g.*, *Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356, 365 (5th Cir. 1987).

### III

We hold that Hoog-Watson introduced evidence sufficient to defeat both the *Heck v. Humphrey* and prosecutorial immunity grounds for summary judgment, and that the qualified immunity issue is not before us. Accordingly, we REVERSE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.