# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 2, 2011

No. 10-10258

Lyle W. Cayce
Clerk

RICHARD FUJITA,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:08-CV-126

Before SMITH, WIENER, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Richard Fujita appeals a summary judgment that resulted from his failure to designate an expert to support his medical malpractice claim. We affirm, because the district court gave Fujita ample opportunity to designate and did not abuse its discretion in enforcing its deadline. Absent designation of an expert,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10258

there is no genuine issue of material fact on the standard of case to support Fujita's claims.

I.

Fujita is a federal inmate. In February 2008, he sued under the Federal Tort Claims Act ("FTCA"), alleging that, for his asthma, he received negligent medical care from the Bureau of Prisons ("BoP") and that he is entitled to recover damages under Texas law.[1] Specifically, he claims that the BoP provided dangerously high doses of Prednisone against the advice of two asthma specialists, causing him to develop Type-II steroid-induced diabetes mellitus.

The scheduling order set a deadline of November 28, 2008, for Fujita to provide expert witness disclosures under Federal Rule of Civil Procedure 26(a)(2) and a deadline of March 31, 2009, to complete discovery. Several weeks later, the government moved for an extension of time, and the court extended the expert-disclosure deadline to January 28, 2009, and the discovery deadline to June 1, 2009.

Fujita took no action until January 27, 2009, when he served the government with his first request for production of documents, including a request for his medical records.[2] The government responded by noting that Fujita could request his medical records directly from the BoP. When Fujita objected that doing so would take too long, the government produced 942 pages of medical records and 960 pages of health-service materials. Fujita objected by letter that he could not locate his prescription-drug history among the produced documents, but the government refused to produce more documents or to identify the loca-

---

[1] The FTCA authorizes civil actions for damages against the United States for the negligent acts of its employees where private individuals would be liable under the law of the state in which the acts occurred. *See* 28 U.S.C. § 1346(b).

[2] Fujita dated the request January 29 but certified that it was served on January 27.

2

No. 10-10258

tion of the requested materials, again reminding Fujita that he could request them directly from the BoP.

On April 21, Fujita moved to compel the government to produce the requested documents. Instead of responding, the government moved for summary judgment on April 30, then on May 7 moved to stay discovery, pending a ruling on the summary judgment motion, arguing that Fujita could not prove his claim without a medical expert and that he had not timely designated one. Also on May 7, Fujita served a request for admissions.

Fujita answered the summary judgment motion on May 28 with a Federal Rule of Civil Procedure 56(f) motion for continuance until he could complete further discovery, reasoning that he could not designate a medical expert until the government complied with his first discovery request and released all his medical records. On June 5, the government filed a motion for a protective order. Fujita on June 9 filed a second motion to compel production of the medical records and for discovery sanctions.

The court resolved these matters in an order of June 25. It granted Fujita until August 10 to designate an expert and thus avoid summary judgment, but it stayed all discovery in the interim and deferred ruling on Fujita's motions to compel. Later the court extended that deadline until August 24. On September 2, Fujita notified the court that he could not meet that deadline, protesting that an expert who had expressed interest in his case would not sign on until the expert had evaluated the medical records that the government had declined to release. The court refused to allow more time, instead granting the motion for summary judgment and dismissing the action. Fujita appeals the summary judgment.

## II.

The district court has "broad discretion and inherent power to stay discov-

ery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 582, 583 (5th Cir. 1987). For example, under Federal Rule of Civil Procedure 26(c), the court may stay discovery for "good cause," such as a finding that further discovery will impose undue burden or expense without aiding the resolution of the dispositive motions.[3] We review the grant of a motion to stay discovery for abuse of discretion.[4]

The court had good cause to stay discovery. The pending summary judgment motion was dispositive and turned solely on whether Fujita could appoint a medical expert. Fujita asserted that he could not obtain an expert without further discovery, but the court rejected that contention. That decision was correct for at least three reasons.

First, the lack of medical records was not the most significant reason for Fujita's delay in securing an expert. He knew the initial deadline for submitting expert disclosures was January 28, but he did not request his records until January 27. Had the lack of records really thwarted his efforts to obtain an expert, he should have sought to obtain them well before the expert deadline. His delay in doing so suggests that his argument is a pretext disguising an initial lack of diligence in finding an expert.[5]

Second, the government repeatedly and accurately informed Fujita that he could get all his medical records from the BoP. *See* Bureau of Prisons Program Statement 6090.02, at 15 (Oct. 13, 2008). There is no indication in the rec-

---

[3] *See Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 435-36 (5th Cir. 1990); *see also* 6 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.105[3][c] (3d ed. 2010).

[4] *See Brandley v. Keeshan*, 64 F.3d 196, 200 (5th Cir. 1995), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007).

[5] The deadlines in the scheduling order were justified and routine. Courts must set the deadline for expert disclosures well before the close of discovery to ensure that the other side has an opportunity to depose the expert. 3 MOORE ET AL., *supra*, § 16.13[2][b][iii].

No. 10-10258

ord that Fujita made such a request.

Third, Fujita had already obtained 942 pages of his medical records. Although he may be correct that those pages left out the relevant prescription history, those records, combined with Fujita's own recollections of the drugs he was taking, provided some basis to consult with an expert.

Fujita's difficulties deserve some solicitude because of "this court's traditional disposition of leniency toward pro se litigants." *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998). The district court was lenient enough, however. Its initial deadline for expert disclosures was November 28, 2008, but it gave an extended deadline to January 28, 2009. Fujita let that deadline pass without designating an expert or explaining his failure to do so. In fact, he gave no indication that he even wanted to designate an expert until his May 28 motion to continue.

The court would have been justified in enforcing the deadline.[6] Instead, it extended the deadline by over six months, giving Fujita until August 10––and then until August 24––to find an expert. Moreover, the court did not require Fujita to have an expert report prepared by that time, so long as he had secured a commitment from an expert to testify. The district court by no means abused its discretion in its management of discovery.

III.

"We review [a] summary judgment *de novo*." *Dunn-McCampbell Royalty*

---

[6] *See Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) ("'Rule 16(b) of the Federal Rules of Civil Procedure authorizes the district court to control and expedite pretrial discovery through a scheduling order. Consistent with the authority vested in the trial court by rule 16, our court gives the trial court 'broad discretion to preserve the integrity and purpose of the pretrial order.'" (quoting *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979))); *see also* 3 MOORE ET AL., *supra*, § 16.14[1][a] (noting that the enforcement of scheduling orders is an "essential mechanism for cases becoming trial-ready in an efficient, just and certain manner" (quoting *Rouse v. Farmers State Bank of Jewell, Iowa*, 866 F. Supp. 1191, 1198 (N.D. Iowa 1994))).

No. 10-10258

*Interest, Inc. v. Nat'l Park Serv.*, 2011 U.S. App. LEXIS 461, at \*10 (5th Cir. Jan. 7, 2011) (citing *Croft v. Governor of Tex.*, 562 F.3d 735, 742 (5th Cir. 2009)). Summary judgment is appropriate if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The district court correctly concluded that the government is entitled to summary judgment if Fujita cannot designate an expert witness to establish that the government breached the standard of care, an essential element of the medical-malpractice claim.[7] Fujita does not dispute that maxim but argues that summary judgment is disfavored where relevant evidence remains to be discovered and that the court should have given him more time to find an expert. As we have explained, however, the court gave Fujita ample time, and it was reasonable to conclude that granting yet more time would not make a difference.

Finally, Fujita maintains that there is a genuine dispute as to a material fact, because the government did not timely respond to his request for admissions, so all of them should be deemed admitted. *See* FED. R. CIV. P. 36(a)(3). Fujita served the request on April 30.[8] The thirtieth day was Saturday, May 30, FED. R. CIV. P. 6(a)(1)(C), so the period ran until the next business day, June 1. The government had three additional days to respond under Rule 6(d), because

---

[7] *See Hannah v. United States*, 523 F.3d 597, 601-02 (5th Cir. 2008) (holding that expert testimony is required to establish that the defendant breached the standard of care in a Texas medical malpractice case unless "'the mode or form of treatment is a matter of common knowledge or is within the experience of the layman'" (quoting *Hood v. Phillips*, 554 S.W.2d 160, 165-66 (Tex. 1977))).

[8] Fujita argues that the date of service should be calculated from the date that he handed the request for admissions to the prison guards under the "prisoner mailbox rule." *See Stoot v. Cain*, 570 F.3d 669, 671 (5th Cir. 2009). That rule applies to calculate the date a prisoner *files* a document, not the date he *serves* it on another party. *See id.* ("Under the prison mailbox rule, a prisoner's pleading is deemed to have been filed on the date that the *pro se* prisoner submits the pleading to prison authorities for mailing."). *Service* is complete when the document was mailed. *See* FED. R. CIV. P. 5(b)(2)(C).

No. 10-10258

Fujita mailed the documents.  The deadline to respond was therefore June 4.
The government timely responded by serving its objections and motion for a pro-
tective order that day.  Thus, there were no deemed admissions.

For the reasons stated, the summary judgment is AFFIRMED.