# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 18, 2011

No. 10-60437

Lyle W. Cayce
Clerk

LESLIE B. LAMPTON,

Plaintiff,

versus

OLIVER E. DIAZ, JR.; JENNIFER DIAZ,

Defendants-Third Party Plaintiffs-
Appellees,

versus

DUNNICA LAMPTON,

Third Party Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Mississippi

No. 10-60437

Before SMITH, WIENER, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

In *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), the Court held that pro-secutors retain common-law immunity from suit for all actions "intimately as-sociated with the judicial phase of the criminal process." This appeal raises the issue of whether that absolute immunity extends to a prosecutor's post-trial transfer of private federal tax records to a state ethics commission. Concluding that it does not, we affirm the denial of a motion to dismiss.

I.

Between 2003 and 2006, Dunnica Lampton, the U.S. Attorney for the Southern District of Mississippi, prosecuted Oliver Diaz, a Mississippi Supreme Court justice, and Jennifer Diaz, his wife, for fraud, bribery, and tax evasion. Oliver Diaz was acquitted, but Jennifer Diaz pleaded guilty to tax evasion. Lampton then filed a complaint with the Mississippi Commission on Judicial Performance (the "Commission") about Oliver Diaz's conduct. He included copies of the Diazes' federal tax records obtained during the criminal investigation.[1] The Commission dismissed the complaint in December 2008.

The Diazes sued Lampton in federal court, alleging a violation of 42 U.S.C. § 1983 based on deprivation of rights under 18 U.S.C. § 1905 and 26 U.S.C. §§ 6103 and 7213.[2] Jennifer Lampton also later raised a claim under 26 U.S.C.

---

[1] The parties have not informed us whether the tax records were introduced in evidence in the criminal proceedings or, if so, whether they were under seal. We therefore assume that those records remained confidential before Lampton forwarded them to the Commission.

[2] The Diazes filed their claims as a third-party complaint in an action brought by Leslie Lampton, one of the members of the Commission and a distant relative of Dunnica Lampton. Leslie Lampton was seeking a declaratory judgment of immunity from suit by the Diazes. Only the dispute between the Diazes and Dunnica Lampton is at issue in this appeal.

No. 10-60437

§ 7431.  Those statutes prohibit government officials from releasing private tax records obtained in the course of their duties.  The Diazes' suit also included a number of state law claims.  Lampton filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the § 1983 claim, arguing that absolute prosecutorial immunity shields his decision to give the tax records to the Commission.  The district court denied the motion,[3] and Lampton appealed.[4]

II.

We review *de novo* the grant of a Rule 12(b)(6) motion to dismiss.  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).  "In determining immunity, we accept the allegations of respondent's complaint as true."  *Kalina v. Fletcher*, 522 U.S. 118, 122 (1997).  We also assume, without deciding, that the Diazes' allegations state a cause of action under § 1983.

In *Imbler*, 424 U.S. at 427, the Court established that Congress did not abrogate prosecutors' common-law immunities when it enacted § 1983.  That immunity, however, does not extend beyond its scope that existed at common law in 1871, when § 1983 was enacted,[5] nor does it persist unless the policy behind the common-law rule is still applicable.[6]  To determine whether prosecutorial

---

[3] *Lampton v. Diaz*, 2010 U.S. Dist. LEXIS 44738 (S.D. Miss. 2010).

[4] Lampton did not raise, and the district court did not address, other immunities that might be applicable.  This opinion thus addresses only the applicability of absolute prosecutorial immunity to the § 1983 claim.

[5] *Imbler*, 424 U.S. at 420 ("[O]ur earlier decisions on § 1983 immunities were not products of judicial fiat . . . .  Rather, each was predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it. The liability of a state prosecutor under § 1983 must be determined in the same manner.").

[6] *Id.* at 424 ("We now must determine whether the same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under § 1983.").

3

No. 10-60437

immunity applies, we thus ask "(1) whether, at the time of § 1983's enactment, the practical function of the conduct at issue merited absolute immunity, and (2) whether, at present, absolute immunity for the conduct at issue is necessary to advance the policy interests that justified the common law immunity."[7] Neither of those inquiries supports Lampton's claim to immunity.

## A.

At the time of § 1983's enactment, common-law prosecutorial immunity extended only to "conduct that is 'intimately associated with the judicial phase of the criminal process.'"[8] Absolute immunity did not extend to "'those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'"[9] Most immunity cases thus focus on the distinction between a prosecutor's investigatory functions and advocacy functions related to the judicial process.[10] Lampton, by contrast, asserts that immunity should extend to post-trial conduct instituting a new proceeding before a different tribunal. On its face, that conduct appears to be well outside the bounds of the common-law protection: Conduct undertaken after a federal prose-

---

[7] *Hoog-Watson v. Guadalupe Cnty.*, 591 F.3d 431, 438 (5th Cir. 2009) (citing *Kalina*, 522 U.S. at 123; *Buckley v. Fitzsimmons*, 509 U.S. 259, 267-71 (1993); *Burns v. Reed*, 500 U.S. 478, 484-96 (1991); *Cousin v. Small*, 325 F.3d 627, 631-32 (5th Cir. 2003)).

[8] *Hoog-Watson*, 591 F.3d at 438 (quoting *Burns*, 500 U.S. at 486).

[9] *Id.* (quoting *Buckley*, 509 U.S. at 273). Recently, the Supreme Court extended immunity to include certain administrative actions, including the failure adequately to train or supervise other prosecutors to protect defendants' rights. *See Van de Kamp v. Goldstein*, 129 S. Ct. 855, 864-65 (2009). Although Lampton insists that *Van de Kamp* expanded prosecutorial immunity, it did so only for "a certain kind of administrative obligation—a kind that itself is directly connected with the conduct of a trial." *Id.* at 862. If Lampton's conduct could be characterized as administrative—which he does not contend—it was not directly connected with the conduct of the trial, as explained *infra*.

[10] For example, a prosecutor's appearance in court in support of a search warrant is protected, but providing legal advice to the police during pretrial investigation is not. *Burns*, 500 U.S. at 492-96.

4

No. 10-60437

cution is over is not part of the "judicial phase," and a state ethics proceeding is not part of "the criminal process."

To support his novel argument, Lampton contends that *Butz v. Economou*, 438 U.S. 478 (1978), shows that immunity can extend to actions before tribunals other than courts, such as federal administrative boards, even though those boards did not exist at common law.[11]  Following *Economou*, some courts have extended immunity to members of state ethics commissions.[12]  Lampton contends he should enjoy the same immunity, because he was acting before a state ethics commission.  He was not, however, acting as a member of the Commission, nor was he a state ethics attorney authorized to prosecute cases before it. *Vis-a-vis* the Commission, his status was merely that of a complaining witness, and complaining witnesses were not accorded absolute immunity at common law.[13]  *Economou* and its progeny do not support Lampton's position.

Lampton also points to one case in which a prosecutor enjoyed absolute immunity for post-trial conduct.  In *Demery v. Kupperman*, 735 F.2d 1139 (9th Cir. 1984), a prosecutor after trial revoked a waiver of the requirements for a suspended doctor to reclaim his medical license under state law and failed to notify the doctor of the revocation.  The court ruled that the prosecutor enjoyed absolute immunity, because "prosecutors are absolutely immune from civil suits al-

---

[11] *See Economou*, 438 U.S. at 516 (1978) ("[W]e hold that those officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision.").

[12] *See, e.g.*, *Carroll v. Gross*, 984 F.2d 392 (11th Cir. 1993); *Simons v. Bellinger*, 643 F.2d 774 (D.C. Cir. 1980).

[13] *See Malley v. Briggs*, 475 U.S. 335, 340-341 (1986) ("[C]omplaining witnesses were not absolutely immune at common law.  In 1871, the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause.  Given malice and the lack of probable cause, the complainant enjoyed no immunity.  The common law thus affords no support for petitioner." (footnote omitted)); *see also Kalina*, 522 U.S. at 129-31 (holding that a prosecutor acting as a complaining witness is not entitled to absolute immunity).

No. 10-60437

leging wrongdoing with regard to post-litigation as well as pre-litigation hand-
ling of a case." *Id.* at 1144.  Lampton contends that his actions following the
criminal prosecution should be similarly immune.

But *Demery* does not support Lampton's argument.  The prosecutor there
was completing his duty under state law to monitor the outcome of the proceed-
ing.  His actions were thus related to the litigation over which he had jurisdic-
tion.  By contrast, Lampton is a federal prosecutor with no duty to bring com-
plaints before a state ethics commission, and the actions for which he seeks im-
munity are unrelated to his prosecution of the Diazes.  Lampton protests that
he would not have had access to the tax records were it not for his role as a pro-
secutor, but that connection is too tenuous.  A prosecutor does not have *carte
blanche* to do as he pleases with the information he can access.  He can use it on-
ly to fulfill his duties as a prosecutor, and Lampton's actions went well beyond
those bounds.

Lampton's insistence that he had a duty under the Mississippi Rules of
Professional Conduct to report Diaz's misconduct does not change that conclu-
sion.[14]  Lampton could have reported Diaz's misconduct without releasing the tax
records, so his ethical duty did not compel violation of the federal statute.  Lamp-
ton's ethical responsibilities did not make the transfer of tax records to a state

---

[14] As a preliminary matter, Diaz argues that Lampton waived this argument by failing
to brief it adequately in the district court.  Lampton's memorandum in support of his motion
to dismiss did not mention the issue, which he did not raise until his reply memorandum.

The waiver rule exists to prevent an appellate court from "[analyzing] the facts of a par-
ticular [issue] without the benefit of a full record or lower court determination."  19 JAMES W.
MOORE ET AL., MOORE'S FEDERAL PRACTICE § 205.05[1], at 205-57 (3d ed. 2011) (quoting *Yee
v. City of Escondido*, 503 U.S. 519, 538 (1992)).  Waiver generally will not apply "when [an is-
sue] fairly appears in the record as having been raised or decided."  *Id.* (citing *Wheatley v. Wi-
comico Cnty.*, 390 F.3d 328, 334-35 (4th Cir. 2004)).  Here, despite stating that it might be
waived, the district court addressed Lampton's argument that state ethics rules required the
disclosure.  Moreover, there is no prejudice, because Diaz has had an opportunity to respond
to that argument on appeal.  We thus address Lampton's argument on the merits.

6

No. 10-60437

commission part of his duty as a prosecutor.

In short, Lampton points to no case—and we know of none—extending immunity to post-trial conduct relating to a new action before a new tribunal. Every case extending immunity to post-trial actions involves conduct related to the criminal proceeding that the prosecutor initiated.[15]  Lampton cannot claim immunity, because his post-trial actions did not relate to the criminal proceedings and thus are beyond the scope of immunity at common law.

## B.

Furthermore, the policies underlying prosecutorial immunity do not justify immunity in this context.  The Supreme Court has identified a variety of policy interests behind prosecutorial immunity.  First, and of "primary importance," is the "interest in enabling [the prosecutor] to exercise independent judgment when 'deciding which suits to bring and in conducting them in court.'"  *Kalina*, 522 U.S. at 125 (quoting *Imbler*, 424 U.S. at 424).  Specifically, without absolute immunity, the fear of suit may cause the prosecutor to "shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 423.

That concern is absent here.  In the typical immunity case, the prosecutor faces a retaliatory suit (usually for defamation, malicious prosecution, or the like) only if he loses the initial criminal action.  Immunity is thus necessary to prevent him from shying away from weaker cases out of fear of liability.  By contrast, even if the Commission had ruled against Diaz, Lampton would still

---

[15] *See, e.g.*, *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747 (9th Cir. 2009) (prosecutor's actions at parole hearing); *Parkinson v. Cozzolino*, 238 F.3d 145 (2d Cir. 2001) (prosecutor's actions in defending a direct appeal); *Coleman v. Turpen*, 697 F.2d 1341, 1344 (10th Cir. 1982) (prosecutor's decision not to return defendant's property used as evidence in trial); *Smith v. Shelby Cnty.*, 3 F. App'x 436 (6th Cir. 2001) (prosecutor's actions that allegedly delayed post-conviction relief).

face liability. The federal statutes prohibiting release of tax records (unlike state claims for defamation or malicious prosecution) apply regardless of how "strong" is the case against the defendant. There is thus no "prosecutorial discretion" to protect.

Second, immunity lessens the burden of litigation on prosecutors. Without immunity, the "frequency with which criminal defendants bring [retaliatory] suits" would "impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials." *Van de Kamp*, 129 S. Ct. at 860 (quoting *Imbler*, 424 U.S. at 425-26). That burden is considerably lessened here, for the majority of retaliatory suits arise from a prosecutor's day-to-day actions prosecuting cases. The opportunity to divulge confidential information to other bodies is much less frequent and will lead to less litigation that could interfere with the prosecutor's tasks.

Another relevant consideration is "the existence of means other than the imposition of personal liability on the prosecutor to insure that criminal defendants receive fair treatment in the judicial process" and "to deter dishonest prosecutors." *Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 n.3 (5th Cir. 1985). In this case, the possibility of professional discipline or criminal liability under 18 U.S.C. § 1905 should deter dishonest prosecutors from divulging private tax records. The protections for fair treatment of the defendants, however, are somewhat less than in a typical immunity case. A defendant has the protections of judge, jury, and the appellate process to review any prosecutorial misconduct at trial. Here, by contrast, the decision to release the tax records is unreviewable, and the harm is inflicted immediately. Thus, a civil suit is the only way to make the defendant whole. In short, policy does not support the extension of prosecutorial immunity in this context.

There is, of course, good reason to extend immunity generally to all who report misconduct to state bar ethics committees, and many states have extend-

ed absolute immunity to anyone who files a complaint alleging attorney misconduct.[16] Indeed, as a complainant to the Commission, Lampton likely enjoys immunity from the state law claims under Mississippi law.[17] As shown above, however, federal law does not provide immunity to complainants before state ethics committees, because it was not part of the immunity at common law recognized in *Imbler*. In the absence of congressional action, we should not create that immunity merely because it may be desirable for some policy reason.[18]

The denial of Lampton's motion to dismiss the Diazes' § 1983 claim is AFFIRMED.

---

[16] *See, e.g.*, *Drummond v. Stahl*, 618 P.2d 616 (Ariz. App. 1980); *Field v. Kearns*, 682 A.2d 148 (Conn. App. 1996); *Wong v. Schorr*, 466 P.2d 441 (Haw. 1970); *Richeson v. Kessler*, 255 P.2d 707 (Idaho 1953); *Kerpelman v. Bricker*, 329 A.2d 423 (Md. 1974); *Wiener v. Weintraub*, 239 N.E.2d 540 (1968); *McCurdy v. Hughes*, 248 N.W. 512 (N.D. 1933); *Ramstead v. Morgan*, 347 P.2d 594 (Or. 1959); *see also* Arthur F. Greenbaum, *The Attorney's Duty To Report Professional Misconduct: A Roadmap for Reform*, 16 GEO. J. LEGAL ETHICS 259, 333 (2003) ("Absolute immunity, at least in defamation actions stemming from reporting or participating in the disciplinary process, is the norm.").

[17] *See* MISS. CODE ANN. § 9-19-29 (providing that "[a]ll complaints filed [before the Commission] shall be absolutely privileged"). The district court acknowledged that immunity by noting that "Lampton may well have acted as a member of the bar, and there may be some immunities that would therefore attach." *Lampton*, 2010 U.S. Dist LEXIS 44738, at *17. Lampton does not assert that immunity, however.

[18] *See Buckley*, 509 U.S. at 268 ("[W]e do not have a license to establish immunities from § 1983 actions in the interests of what we judge to be sound public policy. When, as here, the prosecutorial function is not within the advocate's role and there is no historical tradition of immunity on which we can draw, our inquiry is at an end." (citation and quotation marks omitted)).