# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 7, 2022

Lyle W. Cayce
Clerk

No. 22-20054

JOEL FIELD,

*Plaintiff—Appellee*,

*versus*

ANADARKO PETROLEUM CORPORATION,

*Defendant—Appellee*,

*versus*

RUSCO OPERATING, L.L.C.; PLANNING THRU COMPLETION, L.L.C.,

*Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-00575

Before WILLETT, ENGELHARDT, and WILSON, *Circuit Judges*.
CORY T. WILSON, *Circuit Judge*:

A movant attempting to intervene in an action must show that it has a sufficient interest in the litigation to do so. Our would-be intervenors today are two companies that offer an online application (an "app" in today's

parlance) that connects oil field workers looking for work with oil-and-gas operators looking for workers. The companies seek to intervene here because some app-using workers have opted-in as plaintiffs alleging claims for unpaid overtime, under the Fair Labor Standards Act, against an operator that used the app to hire them. The app companies' asserted interests in the litigation relate to arbitration agreements between them and the workers, their belief that a win by the workers would destroy their business model, and a demand for indemnity allegedly made by the defendant operator for liability it might incur as to plaintiffs' claims. The district court found these interests insufficient to justify intervention and denied leave. Because we conclude that the arbitration agreements at issue give rise to a sufficient interest in this action to support the app companies' intervention, we reverse the judgment of the district court and remand for further proceedings.

## I.

Rusco Operating, L.L.C. and Planning Thru Completion, L.L.C. (the Intervenors) developed an app that connects oilfield workers with oil-and-gas operators. Using the app, individuals find work, and operators find the skilled workers they need for their oilfield endeavors. Before would-be workers can use the app, the Intervenors require that they execute agreements in which users expressly identify themselves as "independent professionals," and agree to arbitrate "every claim, controversy, allegation, or dispute arising out of or relating in any way to [a] Project, the Project Details, or this Agreement[.]"[1] These agreements further provide that they

---

[1] The contracts define "Project" this way: "From time to time, Companies [operators] will post proposed projects via the [app], setting for the nature of the services required." They describe "Project Details" as "desired skills, location, date, start time (as applicable), project length (as applicable), proposed pay rate, invoicing terms and any required certifications."

encompass disputes between the workers, the Intervenors, and "intended third party beneficiar[ies] of [the] Dispute Resolution Section[,]" including operators that hire "independent professionals" using the app, like defendant Anadarko Petroleum Corporation.

In February 2020, plaintiff Joel Field filed this collective action against Anadarko alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201. Specifically, Field alleged that Anadarko misclassified him and others as independent contractors rather than employees and did not pay them for overtime as the FLSA requires. Other individual plaintiffs have since opted-in to the collective action, including some who connected with Anadarko via the Intervenors' app.

The Intervenors were served with subpoenas in December 2020, as Field sought to discover and contact potential plaintiffs. After workers who had used their app opted-in to the collective action, the Intervenors filed a motion to intervene of right and, alternatively, for permissive intervention. In the motion, the Intervenors asserted that they should be allowed to intervene in this case because they have an interest in enforcing their arbitration agreements with the plaintiffs and in defending their business model, which rests on classifying their users as independent contractors. A magistrate judge held a hearing on the motion and recommended that the request to intervene be denied. The magistrate judge determined that the Intervenors had failed to demonstrate any of the elements necessary for intervention of right (beyond timeliness of their motion) and that the Intervenors had not offered any compelling argument for permissive intervention. The district court adopted the magistrate judge's recommendations in a brief order over the Intervenors' objections. The Intervenors now appeal.

No. 22-20054

## II.

We have jurisdiction over a denial of a motion to intervene of right because it is an appealable final order. *Edwards v. City of Hous.*, 78 F.3d 983, 992 (5th Cir. 1996) (citing *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 n.5 (5th Cir. 1992); *Piambino v. Bailey*, 610 F.2d 1306, 1320 (5th Cir. 1980)). We review such a denial *de novo*. *Rotstain v. Mendez*, 986 F.3d 931, 936 (5th Cir. 2021).[2]

To intervene of right under Federal Rule of Civil Procedure 24(a), a putative intervenor must show that "(1) the application . . . [was] timely"; (2) that it has "an interest relating to the property or transaction which is the subject of the action"; (3) that it is "so situated that the disposition of the action may, as a practical matter, impair or impede [its] ability to protect that interest"; and, finally, (4) that its interest is "inadequately represented by the existing parties to the suit." *DeOtte v. State*, 20 F.4th 1055, 1067 (5th Cir. 2021) (quoting *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016)).

## A.

"'Timeliness is to be determined from all the circumstances' and 'the point to which [a] suit has progressed is . . . not solely dispositive[.]'" *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1012 (2022) (quoting *NAACP v. New York*, 413 U.S. 345, 365–66 (1973)). Generally, filing

---

[2] We have "'provisional jurisdiction' to review a district court's order denying permissive intervention." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 308 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Rotstain*, 986 F.3d at 942). This means that we review a denial of a motion for permissive intervention for abuse of discretion and, if we find the district court did not abuse its discretion in denying the intervention, we "must dismiss the appeal for lack of jurisdiction." *Id.* (internal quotation marks omitted) (quoting *Rotstain*, 986 F.3d at 942). Because we conclude that the Intervenors may properly intervene of right, we do not address their alternative request for permissive intervention.

4

a motion to intervene as soon as an intervenor realizes its interests are not adequately protected is sufficient to meet the timeliness requirement. *Id.* (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)). A district court's determination of whether a motion to intervene is timely "is generally reviewed for abuse of discretion[.]" *Sierra Club v. Espy*, 18 F.3d 1202, 1250 n.2 (5th Cir. 1994) (citing *Jones v. Caddo Parish Sch. Bd.*, 735 F.2d 923, 926 (5th Cir. 1984)).

Here, the magistrate judge and the district court determined that the Intervenors timely filed their motion to intervene on December 17, 2021. The Intervenors attached to their motion a declaration asserting that they first learned on December 2, 2021, that eleven individuals, hired by Anadarko using their app, had opted in as plaintiffs on September 17, 2021. Field does not challenge the veracity of this statement. Instead, Field asserts that the Intervenors should have been aware of the potential impact on their interests as soon as the class-action lawsuit was filed, or at least by the time they were served with third party subpoenas in December of 2020.

Field argues the wrong standard. The question "is 'not when [an intervenor] knew or should have known that [its] interests would be adversely affected but, instead, when [it] knew that it had an interest in the case.'" *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019) (quoting *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 (5th Cir. 2016)). The Intervenors' alleged interests (considered substantively *infra*) of enforcing arbitration agreements with the plaintiffs, protecting their business model, and, to the extent timely raised, indemnity obligations as to Anadarko, only materialized when individuals with whom the Intervenors had actually contracted became party to the lawsuit. That was September 17, 2021. Field does not dispute this timeline. Field also does not dispute the district court's finding that the Intervenors did not learn of these plaintiffs until December 2, 2021, and then moved to intervene just over two weeks later. Therefore,

No. 22-20054

Field has failed to demonstrate that the district court abused its discretion in finding the Intervenors' motion to have been timely filed.

**B.**

The second element, an interest in the action, is met when an intervenor shows a "direct, substantial, legally protectable interest in the proceedings." *DeOtte*, 20 F.4th at 1068 (internal quotation marks omitted) (quoting *Edwards v. City of Hous.*, 78 F.3d 983, 1004 (5th Cir. 1996)). Essentially, "[w]hat is important is 'whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way[.]'" *Id.* (quoting *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)). "Property interests are the quintessential rights Rule 24(a) protects," but they are not the only interests that may support intervention. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022). However, a purported interest "is insufficiently direct when it requires vindication in a separate legal action or the intervenor is too removed from the dispute." *DeOtte*, 20 F.4th at 1068 (internal quotation marks omitted) (citing *Wal-Mart Stores*, 834 F.3d at 568). An interest that is "purely 'ideological, economic, or precedential'" is also insufficient. *La Union del Pueblo Entero*, 29 F.4th at 305 (quoting *Texas*, 805 F.3d at 657).

The Intervenors posit three interests in this case that they contend warrant intervention: enforcement of their arbitration agreements with the plaintiffs; the impact of this case on their business model; and, perhaps belatedly,[3] potential indemnity obligations to Anadarko. We begin by

---

[3] The Intervenors may have forfeited their argument related to possible indemnity, at least based on the record before us, because it is not clear they raised this issue until they filed objections to the magistrate judge's report and recommendation to deny their motion to intervene. *See Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate court had issued its findings and recommendations . . . Respondent has waived [the arguments]."). But we need not delve more deeply into this question given

examining the Intervenors' contractual rights and obligations. We end there too, as we conclude Intervenors' arbitration agreements with the plaintiffs give the Intervenors "a stake in the matter" sufficient to warrant intervention. *DeOtte*, 20 F.4th at 1068 (internal quotation marks and citation omitted). And, at least to some degree, the Intervenors' other proffered grounds dovetail with their contractual interest.

The Intervenors entered contracts with both the plaintiffs who used their app and Anadarko. Those agreements define a choreographed set of relationships between app-using workers, the Intervenors, and Anadarko, well beyond simple check-the-box boilerplate terms for using the Intervenors' app. For instance, while their work was assigned by Anadarko, the workers were actually compensated by the Intervenors. The contracts with individual plaintiffs stipulate, among other things, that the plaintiffs are "independent professionals." The contracts also provide that any disputes between the plaintiffs and the Intervenors, or between the plaintiffs and "intended third party beneficiar[ies]," including operators like Anadarko that use the app to hire workers for "Projects," are subject to binding arbitration. The contract with Anadarko obligates the Intervenors to provide independent contractors to Anadarko and allows Anadarko to hold the Intervenors liable if they misclassify individuals as independent contractors.[4]

---

that the Intervenors' arbitration agreements with the plaintiffs constitute a sufficient interest to justify intervention.

[4] The Master Services Agreement (MSA) between the Intervenors and Anadarko addresses the relationship between workers referred by the Intervenors' app and Anadarko in some detail. As examples, the MSA provides that a worker hired through the app "shall be an independent contractor with respect to all Services," and shall have no right "to any pension or welfare plans, including, without limitation, savings, retirement, medical, dental, insurance, or vacation plans sponsored by [Anadarko]." Workers also must agree "to comply with all applicable state and federal payroll tax withholding requirements" themselves. Because the Intervenors do not invoke their agreement with Anadarko as a

The plaintiffs thus represented in their contracts with the Intervenors that they were "independent professionals"—somewhat in tension with the plaintiffs' current litigation position that they were really Anadarko's employees. More importantly, the plaintiffs agreed to arbitrate "every claim, controversy, allegation, or dispute arising out of or relating in any way to" not only their relationship with the Intervenors, but also their resulting work placements with Anadarko. And the contracts expressly encompass third party beneficiaries like Anadarko. Thus the Intervenors' interest in enforcing their arbitration agreements, particularly given the interrelatedness of the parties' contractual relationships and the plaintiffs' claims, is "a stake in the matter that goes beyond a generalized preference that the case come out a certain way[.]" *DeOtte*, 20 F.4th at 1068.

## C.

Regarding the third element, "[t]hough the impairment must be 'practical' and not merely 'theoretical,' the [intervenor] need only show that if [it] cannot intervene, there is a possibility that [its] interest could be impaired or impeded." *La Union del Pueblo Entero*, 29 F.4th at 307 (citing *Brumfield v. Dodd*, 749 F.3d 339, 344–45 (5th Cir. 2014)).

The Intervenors more easily demonstrate this element. To date in the litigation, Anadarko has not taken any action to compel arbitration against any of the plaintiffs who contracted with the Intervenors. Indeed, as a non-signatory to the agreements, there is at least some question as to whether Anadarko *could* invoke the Intervenors' arbitration agreements with the plaintiffs. *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530–31 (5th Cir. 2019) (listing some situations where non-parties

---

basis for intervening, other than the contract's indemnity provisions, *see supra* n.3, we do not address that contract in detail here.

may enforce arbitration agreements, i.e., through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel" (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009))).  But as long as that question remains a hypothetical one, the Intervenors' interest in enforcing their arbitration agreements with the plaintiffs is, as a practical matter, at risk of being lost as this litigation proceeds.

More broadly, while Anadarko's incentives to vindicate the other terms of the plaintiffs' contracts may be somewhat aligned with those of the Intervenors, the respective motivations of Anadarko and the Intervenors are not so compatible to ensure that the Intervenors' contracts are not "impaired or impeded" during the course of the litigation.  *La Union del Pueblo Entero*, 29 F.4th at 307 (citation omitted).  This is particularly so given that the plaintiffs seemingly are essentially *flaunting* the terms of the contracts they entered with the Intervenors, including their agreement to arbitrate, by opting-in to this action and alleging that they were really Anadarko's employees all along.

## D.

Finally, the fourth element, inadequate representation, requires that the would-be intervenors at least establish "adversity of interest, collusion, or nonfeasance on the part of the existing party" that "has the same ultimate objective" for the lawsuit as the party seeking to intervene.  *Id.* at 308 (internal quotation marks omitted) (quoting *Edwards*, 78 F.3d at 1005; *Texas*, 805 F.3d at 661–62).  The Intervenors substantiate "adversity of interest" between Anadarko and them sufficient to merit intervention.  *Id.* (citations omitted).  Anadarko has thus far not pressed the plaintiffs' agreement to arbitrate their disputes.  No one else in this action will, to be sure.  By contrast, Anadarko has given every indication that it intends to exercise the

rights it has under its own contract with the Intervenors, including the possibility of seeking indemnity against them for liability as to the plaintiffs' claims. That in itself demonstrates that Anadarko's and the Intervenors' respective interests are adverse for the purposes of Rule 24(a)(2).

### III.

Rusco Operating, L.L.C. and Planning Thru Completion, L.L.C. timely moved to intervene in this action. They have shown an adequate interest in the subject of this lawsuit by virtue of their contracts with the parties, and "disposing of the action may as a practical matter impair or impede the [Intervenors'] ability to protect [their] interest." FED. R. CIV. P. 24(a)(2). By contrast, no other party in this action will adequately represent the Intervenors' interest. They should therefore be allowed to intervene of right, and the district court erred in denying their motion to do so. We REVERSE the district court's ruling and REMAND for further proceedings consistent with this opinion.

REVERSED AND REMANDED.