# United States Court of Appeals for the Fifth Circuit

---

No. 23-50004

---

United States Court of Appeals
Fifth Circuit

**FILED**

January 18, 2024

Lyle W. Cayce
Clerk

Shambaugh & Son, L.P.,

*Plaintiff—Appellant*,

*versus*

Steadfast Insurance Company,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:22-CV-135

---

Before Stewart, Dennis, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

This is an insurance coverage dispute in which the core issue is whether the insurer, Steadfast Insurance Company (Steadfast), is subject to specific personal jurisdiction in Texas. The procurement and enforcement of the relevant Policies occurred almost entirely in the Northeast, nowhere near Texas. The district court, on recommendation from the magistrate judge, dismissed the action for lack of jurisdiction. We affirm because Steadfast's attenuated connections to Texas do not give rise to specific personal jurisdiction there.

No. 23-50004

## I.

Between 2018 and 2020, Steadfast, an Illinois corporation, issued two substantially identical liability insurance policies to EMCOR Group, Inc. (EMCOR), a Connecticut-based corporation and a nonparty to this suit. The 2018–2019 Policy was negotiated in New York, and the 2019–2020 Policy was negotiated in Massachusetts; both Policies were issued as Connecticut surplus lines policies. Further, all the individuals directly responsible for creating the Policies resided in the Northeast. In short, while Steadfast is licensed to sell insurance in Texas, these Policies were negotiated outside of Texas by non-Texans.[1]

Shambaugh & Son, L.P. (Shambaugh) is a wholly owned indirect subsidiary of EMCOR and is covered by the terms of EMCOR's Policies. Shambaugh maintains locations across the nation, particularly including Indiana, and is organized as a limited partnership under Texas law. Southstar Fire Protection Company d/b/a Northstar Fire Protection of Texas, Inc. (Northstar) is a division of Shambaugh, but it is not a separate named party in this dispute. Northstar is likewise covered by the Policies, and it maintains an office in Austin, Texas.

---

[1] Based on email exchanges adduced through discovery in a parallel action in Connecticut, Steadfast's parent company, Zurich American Insurance Company, employed a liability director from Addison, Texas, who incidentally reviewed and edited the 2019–2020 Policy. The emails reflect limited involvement of the Texas-based liability director and are the subject of several recently filed motions in this court and in the district court. Because the glancing involvement of a Texas-based liability director is too attenuated to alter our analysis, we decline Shambaugh's request to take judicial notice of its post-appeal filings in the district court, and we deny Shambaugh's motion for a limited remand, to supplement the record, and for leave to file a supplemental brief. *See, e.g.*, *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 379 n.11 (5th Cir. 2010) (denying late motion to supplement record that was only "tangentially related" to the case).

No. 23-50004

On April 11, 2020, Shambaugh was served with a nonparty subpoena that specifically targeted one of its offices in Indiana. The subpoena requested discovery from Shambaugh regarding its use of aqueous film-forming foams (AFFF), and it was issued in connection with multidistrict litigation pending in South Carolina district court. The plaintiffs in the South Carolina litigation allege that AFFF are carcinogenic. Approximately 216 of those cases originated in Texas or otherwise involve Texas sites and plaintiffs. Shambaugh has spent over $1.7 million to date responding to the subpoena.

After Shambaugh was served with the subpoena, Shambaugh obtained local counsel in South Carolina, and an EMCOR executive in Connecticut notified Steadfast of Shambaugh's intent to seek reimbursement under the Policies for its discovery expenses. Following that notice, Shambaugh's and Steadfast's lawyers and employees in Rhode Island, New Jersey, California, and Washington, D.C. corresponded on the matter. No one involved in these exchanges was based in Texas. Ultimately, Steadfast denied coverage.

Shambaugh sued to recover its discovery expenses in a Texas federal court, asserting claims for breach of contract, breach of good faith, various state law violations, and declaratory relief. Steadfast moved to dismiss the suit for lack of specific personal jurisdiction and for improper venue, or, alternatively, sought to transfer the suit to a proper venue. The district court referred the motion to the magistrate judge, who recommended dismissal for lack of specific personal jurisdiction and, alternatively, dismissal for improper venue. One day after the magistrate judge issued his report, Steadfast filed a lawsuit in Connecticut district court seeking declaratory relief that it is not liable to Shambaugh under the Policies.[2]

―――――――――――――――――――

[2] Shambaugh has repeatedly moved this court to take judicial notice of the Connecticut action. We grant Shambaugh's request and take notice that a parallel case,

In its objections to the magistrate judge's report, Shambaugh raised several arguments for the first time. Regardless, the district court adopted the magistrate judge's report and concluded that it could not exercise specific personal jurisdiction over Steadfast. The district court's judgment dismissing the case did not address venue. Shambaugh now appeals.

## II.

"Absent any dispute as to the relevant facts, whether personal jurisdiction can be exercised over a defendant is a question of law and subject to *de novo* review." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 584 (5th Cir. 2014). "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). In such a situation, "[t]he plaintiff has the burden to make a *prima facie* showing that personal jurisdiction is proper." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (emphasis added); *see also E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 295 (5th Cir. 2020) (applying the same standard of review).

## III.

Shambaugh advances six arguments for specific personal jurisdiction on appeal. Three are forfeited, and the remaining three lack merit. Accordingly, we affirm the district court's decision to dismiss this action for

---

*Steadfast Insurance Company v. Shambaugh & Son, L.P. et al.*, case number 3:22-cv-01306-SRU, has been filed in the United States District Court for the District of Connecticut. However, that action was filed after the magistrate judge issued his report in this case, and the district court did not mention the Connecticut action in its decision, so the parallel Connecticut action has no bearing on the issues before this court.

lack of specific personal jurisdiction. Based on this determination, we do not reach Shambaugh's other arguments regarding venue and transfer.

## A.

We begin with forfeiture.[3] Steadfast contends that several of Shambaugh's arguments are forfeited because Shambaugh failed to raise them before the magistrate judge. True enough, this court considers arguments forfeited if they are not raised before a magistrate judge, even if they are subsequently raised before the reviewing district court in objections to the magistrate judge's report and recommendation. *See, e.g.*, *Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1019 n.3 (5th Cir. 2022); *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994); *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992). Against this principle, we unpack Steadfast's forfeiture arguments.

## 1.

Steadfast asserts that Shambaugh has forfeited four of its arguments, namely those based on: (1) Steadfast's alleged Texas state law violations, (2) the absence of a jurisdiction or venue provision in the Policies, (3) article 21.42 of the Texas Insurance Code, and (4) the nationwide coverage provisions of the Policies. Steadfast is correct that the first three arguments were not initially presented to the magistrate judge and are thus forfeited, but

---

[3] The parties use the terminology of waiver rather than forfeiture in their briefing. "The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *see Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) (discussing the distinction between waiver and forfeiture). The issues raised by Steadfast implicate questions of forfeiture, not waiver.

Shambaugh is correct that the nationwide coverage argument was raised and has therefore not been forfeited. We address each argument in turn.

First, Shambaugh contends that by refusing to reimburse its discovery costs, Steadfast committed various wrongs—such as breach of the duty of good faith and fair dealing, violation of the Texas Insurance Code, and violation of the Texas Deceptive Trade Practices Act—that are cognizable under Texas state law independent of Shambaugh's breach of contract claim. And because Steadfast perpetrated these civil violations against Shambaugh in Texas, Shambaugh reasons that they give rise to specific personal jurisdiction over the perpetrator, Steadfast.

But this argument appears nowhere in Shambaugh's briefing before the magistrate judge; therefore, it is not preserved. Undeterred, Shambaugh points to this court's decision in *Lampton v. Diaz* to contend that forfeiture should not apply. 639 F.3d 223 (5th Cir. 2011). *Lampton* stated that forfeiture "generally will not apply 'when [an issue] fairly appears in the record as having been raised or decided.'" *Id.* at 227 n.14 (alteration in original) (quoting 19 James W. Moore et al., Moore's Federal Practice § 205.05[1] (3d ed. 2011)). Shambaugh asserts that it fairly raised its argument about violations of state law before the magistrate judge because those state law claims appear in its complaint. Shambaugh also contends that Steadfast's briefing before the magistrate judge contains a reply to the argument about violations of state law. Neither the record nor the law supports Shambaugh's assertions.

As for the record, Steadfast's reply brief before the magistrate judge makes a one-line reference to "which state's law governs Plaintiff's tort and statutory claims." In context, this choice of law statement is nested within a broader discussion about forum shopping. While this line might prove that Steadfast read Shambaugh's complaint, it is far from a substantive argument

that "addressed the issue of Shambaugh's tort claims" as Shambaugh asserts.

On the law, *Lampton* specifically notes that forfeiture "exists to prevent an appellate court from '[analyzing] the facts of a particular [issue] without the benefit of a full record or lower court determination.'" *Id.* (citation omitted); *cf. Yee v. City of Escondido, Cal.*, 503 U.S. 519, 538 (1992) ("Prudence also dictates awaiting a case in which the issue was fully litigated below, so that we will have the benefit of developed arguments on both sides and lower court opinions squarely addressing the question." (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 552 n.3 (1990))). In *Lampton*, this hurdle was cleared because the district court addressed the debatably forfeited arguments in its decision. 639 F.3d at 277 n.14. But here, the district court did not do so. Instead, Shambaugh contends that its complaint fairly presented, and thus preserved, the specific personal jurisdiction argument based on state law that it now seeks to make. Shambaugh is incorrect. Indeed, if complaint allegations alone prevented subsequent forfeiture, then it is difficult to imagine when any claim or argument could ever be forfeited. Because Shambaugh's specific personal jurisdiction argument based on state law was not sufficiently raised before the magistrate judge, it is forfeited, and we do not consider it further.

Shambaugh next asserts that Steadfast should be subject to specific personal jurisdiction in Texas because Steadfast failed to include a jurisdiction or venue provision in the Policies that specified, or otherwise limited, where it could be sued. Notwithstanding the circular nature of this argument, the trouble is—once again—this argument does not appear in Shambaugh's briefing before the magistrate judge.

Arguing against forfeiture, Shambaugh asserts that the Policies were attached as an exhibit to its complaint. But if including a claim in a complaint

fails to preserve that claim, as previously discussed, then *a fortiori* attaching an exhibit to a pleading does not insulate arguments derived from that exhibit against forfeiture.

Next, article 21.42 of the Texas Insurance Code requires insurance contracts payable to citizens or inhabitants of Texas to be governed by Texas law. Tex. Ins. Code art. 21.42. And as Shambaugh now contends, Steadfast should be subject to specific personal jurisdiction in Texas because article 21.42 subjects the Policies to Texas law. However, Shambaugh made no reference to article 21.42 in its briefing before the magistrate judge, nor even in its complaint.

Nevertheless, Shambaugh contends that its article 21.42 argument was incorporated within its broader argument about Steadfast's minimum contacts with Texas. Shambaugh further asserts that the magistrate judge ruled on its article 21.42 argument by ruling on Shambaugh's minimum contacts. Despite Shambaugh's assertion to the contrary, its article 21.42 argument is narrower and conceptually distinct from its other minimum contacts arguments. Accordingly, the article 21.42 argument is forfeited, even if its remaining minimum contacts arguments are not.

Finally, Shambaugh contends that the nationwide scope of the Policies subjects Steadfast to specific personal jurisdiction in any and all of the fifty states. Steadfast suggests this argument was untimely presented, without offering any further explanation for its alleged forfeiture. But Shambaugh raised this point in its briefing before the magistrate judge, and the magistrate judge substantively decided it. Therefore, unlike the foregoing three issues, Shambaugh's nationwide coverage argument is preserved.

**2.**

More generally, Shambaugh advances two broad rationales against forfeiture of its unpreserved arguments. First, Shambaugh contends that an

opposing party cannot be prejudiced by the consideration of otherwise forfeited arguments when that party has a chance to address those arguments in briefing on appeal. Second, Shambaugh asserts that purely legal arguments cannot be forfeited. Neither helps Shambaugh.

Shambaugh's first contention is based on a misreading of *Lampton*. 639 F.3d at 227 n.14. True, this court noted in *Lampton* that "there [was] no prejudice, because [the appellee] . . . had an opportunity to respond to [an] argument on appeal." *Id.* But that statement was based on the fact that the district court in *Lampton* had already resolved the potentially forfeited argument. *Id.* In that context, it would have been bizarre to deem a portion of the district court's decision off-limits for purposes of appeal. By comparison, the record here is not developed on the forfeited issues that Shambaugh now seeks to advance. While Shambaugh raised some of its forfeited arguments in its objections to the magistrate judge's report, the district court did not address those new arguments. And though Steadfast has had the opportunity to respond to Shambaugh's new arguments on appeal, that is no sound basis for reviving forfeited issues. Indeed, allowing forfeited arguments to be cured by appellate briefing would contradict our well-established precedent on issue preservation, and it would undermine the core purpose of our forfeiture rules by opening the door for appellate review of un- or underdeveloped records. *See, e.g.*, *Field*, 35 F.4th at 1019 n.3; *Cupit*, 28 F.3d at 535; *Armstrong*, 951 F.2d at 630. Shambaugh's reasoning on this point is, therefore, unpersuasive.

Shambaugh's second point—that purely legal arguments cannot be waived—overreads the court's language in *Rollins v. Home Depot USA*. 8 F.4th 393, 398–99 (5th Cir. 2021). While in *Rollins*, we observed that an issue might be addressed for the first time on appeal if "it is a purely legal matter and failure to consider the issue will result in a miscarriage of justice," the court went on to find "no principled basis for addressing [the] forfeited

argument" at issue there. *Id.* at 398 (citation omitted). Same here: Shambaugh similarly fails to articulate *why* we should exercise our discretion to consider its otherwise forfeited legal arguments. Accordingly, Shambaugh has not met the standard articulated in *Rollins*, and we decline to reach its forfeited arguments. *Id.* at 398–99.

## B.

We now consider the merits of Shambaugh's preserved arguments for why Steadfast should be subject to specific personal jurisdiction in Texas. We conclude they are all unavailing.

## 1.

"A 'federal court sitting in diversity may assert jurisdiction if (1) the state's long-arm statute' allows it; and (2) exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Id.*

There are two types of personal jurisdiction under federal law: general and specific. *Id.* General personal jurisdiction applies "only when a defendant is 'essentially at home,'" and any and all claims may be brought against a defendant wherever it is subject to such jurisdiction. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). By comparison, specific personal jurisdiction is narrower and attaches only when there is a sufficient connection between a defendant's forum-related contacts and a plaintiff's causes of action. *Id.* at 1024–25. General personal jurisdiction is not at issue here.

This circuit applies a three-step test for determining specific personal jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*E. Concrete Materials*, 948 F.3d at 296 (quoting *Monkton*, 768 F.3d at 433). "If a plaintiff establishes the first two prongs, the burden shifts to the defendant to show that the exercise of personal jurisdiction would be unfair or unreasonable." *Id.*

The guiding principle of specific personal jurisdiction is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "The Supreme Court has long held that 'an individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum.'" *Halliburton*, 921 F.3d at 544 (emphasis and alteration original) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Further, the Court "long ago rejected the notion that personal jurisdiction might turn on mechanical tests, or on conceptualistic . . . theories of the place of contracting or of performance." *Burger King*, 471 U.S. at 478–79 (ellipsis original) (internal quotation marks and citations omitted). Instead, when specific personal jurisdiction is grounded on contractual relations, lower courts must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties'

No. 23-50004

actual course of dealing" to determine "whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479.

The tangential involvement of multidistrict litigation does not amend these jurisdictional rules. "Every federal court to have considered the issue has affirmed that 'the transferee court can exercise personal jurisdiction to the same extent that the transferor court could.'" *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379 (U.S. Jud. Pan. Mult. Lit. 2020) (quoting *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 297 n.11 (3d Cir. 2004)). While no Fifth Circuit case was cited in *Delta Dental*, we have previously expressed our agreement with that articulation of the law. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 529–50 (5th Cir. 2014) (implicitly following the same rationale).

## 2.

Shambaugh advances three arguments for why Steadfast's forum-related contacts warrant specific personal jurisdiction in Texas: (a) that the Policies themselves give rise to specific personal jurisdiction in Texas; (b) that the national scope of the Policies gives rise to specific personal jurisdiction in any state; and (c) that Steadfast is subject to specific personal jurisdiction in Texas because of its participation in other Texas lawsuits. Walking through each argument, none proves sufficient.

### a.

The facts surrounding the "procurement and enforcement" of the Policies do not establish specific personal jurisdiction in Texas. *E. Concrete Materials*, 948 F.3d at 298. The Policies were issued by Steadfast, an Illinois corporation, to EMCOR, a Connecticut corporation. The 2018–19 Policy was negotiated in New York, and the 2019–20 Policy was negotiated in Massachusetts. The disputed discovery expenses resulted from a subpoena served in connection with multidistrict litigation pending in South Carolina.

12

That subpoena was issued to Shambaugh's office in Indiana, and Shambaugh retained counsel in South Carolina to respond to it.  From Connecticut, Shambaugh's parent EMCOR then notified Steadfast about a potential claim under the Policies.  Following that notice, Shambaugh's and Steadfast's lawyers and employees—all outside of Texas—corresponded on the matter.

Granted, a few facts suggest that specific personal jurisdiction might be appropriate in Texas.  The Policies insure Shambaugh, a Texas resident, Steadfast is licensed to sell insurance in Texas, and the Policies extend to cover Northstar, an Austin, Texas "division" of Shambaugh.  But these facts are less relevant than they might appear at first blush.  After all, this court has held that an insurer's securing an insurance contract with a Texas resident "does not, on its own, establish minimum contacts between [the insurer] and Texas." *Halliburton*, 921 F.3d at 544.  And, "Texas's decision to regulate the lines insurance market has nothing to do with [an insurer's] minimum contacts with Texas." *Id.*

Further, the Austin address of Northstar establishes an attenuated connection to Texas at best.  That address appears nowhere in the four corners of the Policies.  Northstar's location is only covered by the 2019–20 Policy because it was mentioned in EMCOR's application for that Policy, which was subsequently incorporated by reference.  And while business records from Northstar's Austin office were turned over as part of Shambaugh's response to the subpoena, the subpoena itself does not mention Northstar, EMCOR's notice of potential claim to Steadfast does not mention Northstar, Shambaugh's complaint does not mention Northstar, and Northstar is not an independent party in this action.  To be sure, the Austin address makes specific personal jurisdiction somewhat more plausible here than in *Halliburton*, where the insurance contract at issue lacked such a feature.  *Id.*  Nevertheless, the many other facts pointing away from Texas preclude the Policies from being "distinctively Texan" as was the insurance

contract in *Eastern Concrete Materials*, where the court found specific personal jurisdiction proper. 948 F.3d at 298.

For these reasons, the circumstances surrounding the procurement and enforcement of the Policies do not establish sufficient minimum contacts to warrant exercising specific personal jurisdiction in this action.

**b.**

Shambaugh's nationwide coverage argument is likewise unpersuasive. According to Shambaugh, "promising to provide nationwide coverage makes it reasonably foreseeable that the insurer could be haled into any state's courts where a covered accident occurred." But, as Shambaugh concedes, this court has never espoused such a theory. To the contrary, over twenty years ago, we held (albeit in an unpublished opinion) that specific personal jurisdiction could not be secured against an insurer based on "worldwide coverage language in the policy." *Perez v. Pan Am. Life Ins. Co.*, No. 96-20241, 1996 WL 511748, at *2 (5th Cir. Aug. 20, 1996) (unpublished).

This case is no different. Accepting Shambaugh's argument would allow for specific personal jurisdiction against nationwide insurers virtually anywhere. Such "would offend the traditional notions of fair play and substantial justice" by disregarding decades of well-developed law grounded in the Due Process Clause. *Id.*; *see* U.S. CONST. amend. XIV, § 1. It would also overstep the careful boundaries of specific personal jurisdiction recently articulated by the Supreme Court in *Ford*. *See* 141 S. Ct. at 1024–32 (eschewing a causation requirement for specific personal jurisdiction, while reiterating the well-established standard for purposeful availment). Shambaugh offers no viable reason to break such tenuous new ground in this case; Steadfast is not subject to specific personal jurisdiction in Texas based on the Policies' nationwide scope alone.

**c.**

Steadfast's involvement in other Texas lawsuits likewise provides no basis for specific personal jurisdiction. The mere fact that a defendant has participated in state court lawsuits in the putative forum, without more, cannot meet this court's standard for specific personal jurisdiction. *Halliburton*, 921 F.3d at 540–43. But rather than proving up any connection between Steadfast's other suits and this one, Shambaugh concedes that they are not related. Assuming *arguendo* then that Steadfast's involvement in other Texas lawsuits passes the minimum contacts threshold, today's case could not "arise out of or relate to" those admittedly unrelated lawsuits. *Ford*, 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017)). Accordingly, the record before us does not support a finding that Steadfast is subject to specific personal jurisdiction in Texas based on its unrelated litigation contacts with that forum.

The possibility of specific personal jurisdiction over Steadfast because of the underlying AFFF litigation similarly proves insufficient. True enough, the AFFF litigation is necessarily related to this action because it triggered the instant dispute over Shambaugh's discovery expenses. According to Shambaugh, there were approximately 755 lawsuits consolidated in the AFFF litigation as of August 2020, and 3,988 lawsuits as of February 2023. Among these cases, Shambaugh represents that over 200 complaints identify specific sites in Texas, and 39 AFFF actions were initially filed in the district court that generated this appeal. Additionally, Shambaugh asserts that its response to the nonparty subpoena included business records from its activities in Texas, records that are maintained in Northstar's Austin office. However, by the admission of Shambaugh's own senior vice president, "the majority of AFFF litigation . . . pertain[s] to the Upper Midwest with respect to Shambaugh." Moreover, Shambaugh does not contend, and the record does not indicate, that Shambaugh or Northstar is party to any of the AFFF

suits.[4]  In short, none of the AFFF actions purport to hold Shambaugh responsible for any of its conduct, much less any of its conduct in Texas.  The only AFFF connection between Shambaugh and Texas is the fact that Shambaugh stored some responsive documents in Austin.

And regardless of Shambaugh's involvement with these AFFF actions, *Steadfast* has no discernible connection to the AFFF litigation aside from its insurance contract with Shambaugh.  A plaintiff cannot manufacture specific personal jurisdiction over a defendant by relying on the plaintiff's own conduct.  The Supreme Court has been clear that the proper inquiry for specific personal jurisdiction must consider the defendant's contacts to determine whether that defendant could "reasonably anticipate" being haled into court in the plaintiff's chosen forum.  *Ford*, 141 S. Ct. at 1027 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984)).  Steadfast could not have reasonably anticipated being haled into court in Texas simply because Shambaugh's records were kept in an office (in Austin) maintained by a division (Northstar) of a subsidiary (Shambaugh) belonging to the original Connecticut-based contracting party (EMCOR).

Steadfast's contacts with Texas, incident to unrelated litigation or the AFFF cases arising in Texas, are too attenuated to warrant exercising specific personal jurisdiction.  This conclusion mirrors *Halliburton*, where the court held that an out-of-state insurer's involvement in Texas litigation did not give rise to specific personal jurisdiction in Texas.  921 F.3d at 540–43.  Accordingly, Steadfast is not subject to specific personal jurisdiction in Texas

---

[4] Indeed, part of the reason Steadfast denied insurance coverage to Shambaugh is that Shambaugh was not a defendant in any AFFF action when it incurred the costs of responding to the nonparty subpoena.

No. 23-50004

based on its participation in unrelated Texas lawsuits, or because of the AFFF litigation.

*    *    *

Shambaugh fails to establish that Steadfast has sufficient minimum contacts with Texas that give rise to, or relate to, this dispute. *See Ford*, 141 S. Ct. at 1026 (quoting *Bristol-Myers Squibb*, 582 U.S. at 262). Because Shambaugh cannot hurdle the first two steps of the specific personal jurisdiction inquiry, this court need not consider whether the exercise of specific personal jurisdiction would be fair and reasonable. *E. Concrete Materials*, 948 F.3d at 296 (quoting *Monkton*, 768 F.3d at 433).

## IV.

Plaintiffs may "forum-shop" to the extent they may choose the forum in which they sue. However, that privilege is not absolute, as it has always been limited by the principles of general and specific personal jurisdiction. *Halliburton*, 921 F.3d at 539. Here, Shambaugh has attempted to stretch our law on specific personal jurisdiction too far by bringing this action—about two Connecticut surplus lines insurance policies—in Texas, a forum with scant relation to the issues it seeks to litigate. The inadequacy of Shambaugh's chosen forum is made even more apparent by the existence of the Connecticut action, where the parties are actively litigating their disagreements over the Policies. This action does not belong in Texas.

Three of Shambaugh's arguments in favor of specific personal jurisdiction are forfeited, and the remaining arguments fail on the merits. We do not reach the questions of improper venue and transfer of venue presented in this appeal. Because the district court correctly concluded that it lacked specific personal jurisdiction over Steadfast, its judgment dismissing this action is AFFIRMED. The pending motions Shambaugh has filed in this court are DENIED, except as otherwise stated herein.